UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KRISTIN SULLIVAN,<br>    Plaintiff,<br><br>v.<br><br>MASSACHUSETTS DEPARTMENT<br>OF HIGHER EDUCATION,<br>    Defendant. | Civil Action No. |

## COMPLAINT

1. Plaintiff Kristin Sullivan brings this suit against her former employer, the Massachusetts Department of Higher Education ("DHE"), to recover financial and emotional damages she has suffered as a result of its decision to terminate her while she was out on FMLA leave, grieving the recent death of her newborn and suffering from a major depression disorder and seeking long-term disability benefits.

### The Parties

2. Plaintiff Kristin Sullivan ("Sullivan"), is an individual who resides at 54 Albion Street Melrose, Massachusetts.

3. Defendant DHE is a statutorily created Massachusetts agency responsible for carrying out the policies established by the Board of Higher Education which maintains a system of public higher education. DHE maintains its office at One Ashburton Place, Room 1401, Boston, MA 02108. At all times relevant to this complaint, Richard Freeland has served as DHE's Commissioner.

4. DHE is the only state funded agency exempt from the policies and controls of the Commonwealth's Human Resource Division ("HRD") which allows it broad discretion and autonomy with respect to its employment practices.

## Jurisdiction

5. This action is based on federal statutes, the Family and Medical Leave Act of 1993, 29 U.S.C.A. §§ 2614 (a) (1) (A) and (B) and 29 U.S.C.A. §§ 2615 (a) (2) ("the FMLA") and 42 U.S.C. §§ 12111-12117, the Americans with Disability Act (the "ADA"). Jurisdiction of this Court is invoked pursuant to 29 U.S.C.A. 2617 (A) (2).

## Factual Allegations

6. Sullivan was hired by DHE as a Personnel/Benefits Specialist in the Human Resources Department ("HR") in January 2009. Ms. Sullivan reported to Katherine Piraino ("Piraino"), Director of Human Resources for the DHE.

7. According to DHE's position description and personnel documents, Sullivan was hired to support the Human Resources Department of benefit functions of its staff and the staff of the Office of Student Financial Aid. At the time of her hire, there were about 50 employees in DHE.

8. In May 2009, Sullivan applied for FMLA leave to care for her baby due August 2009. Sullivan, with her HR background was the first DHE employee to apply for FLMA leave and had to walk Piraino through the process even creating her own documents for her leave. In June, Sullivan also opened a claim under DHE's Income Protection Benefits ("IPB") plan as a pregnancy related disability.

9. On June 9, 2009, Piraino informed Sullivan that her FMLA leave was approved.

10. On July 16, 2009, Piraino informed Sullivan by a memorandum that her leave was approved under the Commonwealth's Enhanced Family Medical Leave modeled on the FMLA and that she was entitled to 26 weeks of leave with a return to work date on February 15, 2010. The memorandum confirmed that during the leave period Sullivan would work two days a week from home and occasionally come into the office starting after two weeks post-partum. Additionally the memorandum confirmed Sullivan agreed to work an 80% schedule after she returned from leave in an effort to accommodate budgetary issues within the DHE,. Piraino ended the memorandum with "Thank you for your continued service and flexibility during these difficult financial challenges....."

11. Sullivan's approved FMLA began on July 22, 2009, when her doctor put her on bed rest. Her daughter was born on August 12, 2009, but tragically died five days later.

12. On September 2, 2009, Sullivan re-opened her claim for IPB benefits for the based on the major depressive disorder and anxiety she was experiencing as a result of her baby's death.

13. On September 18, 2009, Piraino faxed UNUM employer documents in connection with Sullivan's disability claim.

14. Sullivan was candid with Piraino, who called her periodically at home, about her impaired emotional state and her pending claim for benefits. Sullivan also told Deborah D. Hatterly ("Hatterly"), Assistant Commissioner for Fiscal and Administration Policy about her mental state and disability application, Hatterly visited Sullivan at home during the fall of 2009 and gave her advice about filed her disability claims as Hatterly had recently submitted such a claim.

15. On October 29, 2009, UNUM claim representative Josh Reid prepared notes reflecting his conversations that day with Piraino about DHE's return to work plan for Sullivan and confirming that her leave expired in February 15, 2010.

16. Shortly thereafter, on November 10, 2010, Piraino sent Sullivan an email to schedule a conference call "to discuss the state budget's impact on DHE staffing."

17. On November 16, 2009, Piraino, Peter Tsaffaras, DHE's acting General Counsel, and DHE's Deputy Commissioner, Aundrea Kelley, called Sullivan at her home to inform her that her position was being eliminated for budgetary reasons effective March 2010, two weeks after her turn to work date. Sullivan asked about alternate positions and was told none were available. Because she was on unpaid leave and her husband was also out-of work, Sullivan requested that she be laid off effective immediately so she could collect unemployment benefits.

18. Sullivan was the only employee at the DHE affected by the "lay-off." In the months that followed, DHE expanded its staff by 11 new hires in high paid positions and created new positions despite the alleged budgetary crisis. New positions include Director of Administration and Finance, Associate Commissioner of External Affairs, Deputy Commissioner of Administration and Finance, Senior Advisor for Academic Policy, HR/CMS Consultant, and Vision Project Research Associate.

19. In addition, DHE's website demonstrated numerous redundant and overlapping positions---all at far higher salaries than Sullivan's, including Assistant Commissioner, Deputy of Employee Relations and Director of Human Resources.

20. Sullivan applied for unemployment benefits on her termination date of November 30, 2009. Due to the DHE'S lackadaisical response to the unemployment department's

investigator, Sullivan endured several weeks, specifically, over the winter holidays, without any income to provide for her family.

21. DHE's decision to eliminate Sullivan's position was contrary with its decision three months previously when the Department agreed that to restore her position after leave on an 80% schedule. Piraino had assured Sullivan in writing, as late as July, 2009, that her position would be available to her when she returned. No change in the DHE's financial position occurred between July and November.

22. In response to Sullivan's EEOC charge seeking redress for violations of anti-- disability discrimination laws, DHE provided a new reason for Sullivan's termination –that she had been (secretly)hired in the event of a future contingency, namely that DHE would be brought under HRD control and HR related workload would increase. According to DHE, that contingency never materialized and Sullivan's position had not been replaced..

23. Like its previous budget crisis rationale, this new reason is a pretext to hide the real reason DHE terminated Sullivan: because it perceived her as emotionally disabled and because she had evoked her rights under the FLMA to protect her job.

24. DHE's own 2008 and 2009 organization charts show that show that Sullivan was not hired for a potential need but to take over the existing payroll and benefit functions of another employee, Scott Malia who has reported to the same head of the group that Sullivan reported to and who also worked directly with Piraino. Like her predecessor, Sullivan supported the payroll and benefit needs of the DHE staff, which had grown to about 50 during her tenure, a much larger staff than existed in 2008 before Sullivan's hire.

-6-

25. Likewise, after Sullivan was terminated, DHE's October 2010 organizational chart shows that her payroll and benefit administration functions were assumed by Care Corner-Dolloff, Director for HR Application and Payroll Operations.  DHE

26. As a result of Sullivan's unlawful termination, she has suffered significant financial losses and suffered sever emotional distress.  She has incurred costs and attorneys' fees.

## COUNT I

## VIOLATION OF THE FMLA (§ 2614 (a) (1) (A))

27. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 27, as though fully set forth herein.

28. By the above-described conduct, Defendant has discriminated against Plaintiff when she had exercised her right to use FMLA leave by not restoring her to the position held by her when the leave commenced in violation of § 2614 (a) (1) (A).

29. As a result of defendants' unlawful conduct, Plaintiff has suffered damages.

## COUNT II

## VIOLATION OF THE FMLA (§ 2614 (a) (1) (B))

30. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 30, as though fully set forth herein.

31. By the above-described conduct, Defendant has discriminated against Plaintiff when she had exercised her right to use FMLA leave by not restoring her to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment in violation of § 2614 (a) (1) (B).

32. As a result of defendants' unlawful conduct, Plaintiff has suffered damages.

## COUNT III

## VIOLATION OF THE ADA (§ 12112(b)(3)(A))

33. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 33, as though fully set forth herein.

34. By the above-described conduct, Defendant has discriminated against Plaintiff when she had exercised her right to use ADA leave by not restoring her to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment in violation of § 12112(b)(3)(A).

35. As a result of defendants' unlawful conduct, Plaintiff has suffered damages.

## COUNT IV

## VIOLATION OF c. 151B

36. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 36, as though fully set forth herein.

37. By the above-described conduct, Defendant has discriminated against Plaintiff when she had exercised her right to use ADA leave by not restoring her to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment in violation of § c. 151B.

38. As a result of defendants' unlawful conduct, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to:

1. Order DHE to pay Sullivan:

    (a) Front pay;

    (b) Back pay;

    (c) Lost benefits

(d) Emotional distress damages

(e) Punitive damages;

(f) Attorneys' fees and costs as provided for by statute; and

(g) Any other relief as the Court deems just and proper.

### THE PLAINTIFF DEMANDS A JURY TRIAL

Respectfully submitted,
KRISTIN SULLIVAN,
By her attorney,

/s/ Jody L. Newman
Jody L. Newman (BBO# 542264)
**Collora LLP**
600 Atlantic Avenue
Boston, MA  02210-2211
(617) 371-1000
jnewman@collorallp.com

Dated: June 1, 2011